UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LATOYA D. JACKSON,

       Plaintiff,

vs.                                                Case No.  3:06-cv-644-J-16MCR

MICHAEL J. ASTRUE[1], Commissioner of
the Social Security Administration,

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.**      **PROCEDURAL HISTORY**

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on June 24, 2003, alleging an inability to work since May 1, 2003. (Tr. 28, 63-65, 85). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. 27, 29-31, 35). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on May 24, 2005. (Tr. 54, 268, 270). On

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 1, 2007. In accordance with Fed. R. Civ. P. 25(d)(1), Michael J. Astrue should be substituted as Defendant in this litigation.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15).

September 9, 2005, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 12-24). Plaintiff filed a Request for Review by the Appeals Council on October 13, 2005 (Tr. 9), but the Appeals Council denied the request on May 18, 2006 (Tr. 4-6). Accordingly, the ALJ's September 9, 2005 decision is the final decision of the Commissioner. Plaintiff timely filed her Complaint in the United States District Court on July 14, 2006. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since May 1, 2003 (Tr. 28) due to sickle cell disease, heart murmur (Tr. 33), stress, and anxiety (Tr. 38). Plaintiff claims she lacks energy and suffers extreme pain in the chest, legs, and arms. (Tr. 68).

### B.    Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was twenty years of age (Tr. 272) with a twelfth grade education (Tr. 74, 272) and past relevant work experience as a fast food worker, day care teacher (Tr. 69), and tutor (Tr. 88). Plaintiff's medical history is discussed infra. By way of summary, the medical records reveal Plaintiff was diagnosed with sickle cell disease at the age of nine (Tr. 205), but had infrequent crises until 2003 (Tr. 161, 173). Plaintiff's medical history also includes a heart murmur (Tr. 159), sleep apnea (Tr. 207), pharyngitis (Tr. 200), and complaints of pain in the head (Tr. 231), back (Tr. 233), stomach (Tr. 245), right arm (Tr. 220), legs (Tr. 202, 237), throat, and ear (Tr. 214). Plaintiff was treated with IV fluids and medication for her pain. (Tr. 150). She underwent surgery for her sleep apnea (Tr. 210), an EKG (Tr. 187), a chest exam (Tr. 134), and radiological studies (Tr. 166).

### 1. **Plaintiff's Physical Impairments**

The record indicates Plaintiff was diagnosed with sickle cell disease at the age of nine. (Tr. 205). As of June 1, 2003, Plaintiff's last sickle cell crisis was at the age of twelve. (Tr. 160). On June 1, 2003, Plaintiff was admitted at Shands at Lake Shore after a three-week history of worsening back and sternal pain that Plaintiff unsuccessfully tried to treat with Tylenol and Aspirin. (Tr. 159). The admitting physician's impression was sickle cell pain crisis. (Tr. 161, 173). The lab results showed twelve categories were not within normal range. (Tr. 162-64). Plaintiff's radiology consultation showed no evidence of acute cardiopulmonary disease. (Tr. 166). Her cardiovascular exam showed regular heart rate and rhythm with a grade II/VI systolic ejection murmur. (Tr. 159). Plaintiff's back pain resolved shortly after admission. Id. On June 3, 2003, Plaintiff stated she was ready to go home (Id.) and was discharged (Tr. 158) with resolving sickle cell anemia pain crisis (Tr. 159). She was prescribed Tylenol #3 with codeine. Id.

The record shows Plaintiff was also treated for sickle cell anemia at Lake City Medical Center in June 2003 and showed improvement. (Tr. 120). Plaintiff's lab results showed fourteen categories were not within normal range. (Tr. 131-32). Her chest exam revealed a high diaphragm. (Tr. 134). Further, the record indicates Plaintiff was anxious, but was not in any respiratory distress, and was in a stable condition upon discharge. (Tr. 125).

On July 17, 2003, a State Agency physician completed a physical Residual Functional Capacity ("RFC") assessment on Plaintiff. (Tr. 139). The assessment showed she could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday, and push and/or pull

without limitation. (Tr. 140). It also revealed Plaintiff had no postural (Tr. 141), manipulative, visual (Tr. 142), communicative, or environmental limitations (Tr. 143). Plaintiff's chest was clear (Tr. 140-41) and she had no swelling of her joints (Tr. 140). It was noted Plaintiff's symptoms were attributable to a medically-determinable impairment, namely, her sickle cell disease. (Tr. 144).

On July 29, 2003, Plaintiff was admitted at Shands at Lake Shore again for a sickle cell pain crisis. (Tr. 147-48). She complained of pain in her arms, legs, and buttocks. (Tr. 149). Her lab results showed twelve categories were not within normal range. (Tr. 153-55). Plaintiff was prescribed morphine and IV fluids and was discharged on August 1, 2003. (Tr. 147, 150). Shortly thereafter, on August 8, 2003, Plaintiff reported to North Florida Pediatrics with pain complaints, but her pain was resolved. (Tr. 266).

On August 28, 2003, another physical RFC assessment was completed on Plaintiff by Robert L. Steele, M.D. (Tr. 176). Dr. Steele noted Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday, and push and/or pull without limitation. (Tr. 177). Dr. Steele concluded Plaintiff had no postural (Tr. 178), manipulative, visual (Tr. 179), or communicative limitations (Tr. 180). Plaintiff's only limitations were environmental and included avoiding concentrated exposure to extreme cold and extreme heat. Id. Although Dr. Steele stated Plaintiff's symptoms were attributable to a medically-determinable impairment, he noted her symptoms were "partially credible" due to her infrequent crises and her benign exam. (Tr. 181).

Throughout 2003, 2004, and 2005, Plaintiff continued to visit both North Florida Pediatrics and Shands at Lake Shore. (Tr. 185-90, 199-227, 229-30). In 2003 and 2004,

Plaintiff visited North Florida Pediatrics twenty times.  (Tr. 185, 230).  The North Florida reports show Plaintiff complained of pain but did not have sickle cell pain crises in the fall of 2003 (Tr. 260, 263-65), nor in July (Tr. 242) or September of 2004 (Tr. 233, 235).  Although Plaintiff complained of headaches (Tr. 231, 251, 253, 255-56), the record shows they were controlled with medication (Tr. 250-51).  She also complained of pain in the back (Tr. 233, 249), stomach (Tr. 245), and legs (Tr. 237).

The reports from Shands at Lake Shore reveal Plaintiff was doing well and was not in acute distress in the fall of 2003.  (Tr. 224, 227).  In November 2003, Plaintiff complained of mild pain in her legs, blurry vision that caused occasional headaches, and sleepiness.  (Tr. 224).  Her cardiac exam was normal and without any sign of heart murmurs.  Id.  In April 2004, Plaintiff reported to Shands for heavy bleeding of her gums.  (Tr. 222).  At that time, the examining physician noted she might have obstructive sleep apnea.  Id.  On August 19, 2004, Plaintiff was hospitalized for sickle cell disease, vasoocclusive crisis, and history of obstructive sleep apnea and allergic rhinitis.  (Tr. 207).  The August 2004 report from Shands shows Plaintiff was involved in an automobile accident in July 2004 that caused pain in her knees, back, and right arm.  (Tr. 220).  The September 2004 report from Shands shows Plaintiff continued to complain of sleep apnea.  (Tr. 219).  However, Plaintiff's sleep study showed her sleep apnea was generally mild and her "arterial oxygen desaturation was moderate to severe."  Id.

On October 4, 2004, Plaintiff was admitted at Shands again (Tr. 199), complaining of pain in her left leg.  (Tr. 202).  Plaintiff was prescribed medication for the pain.  (Tr. 200).  Her discharge report shows she had a resolving sickle cell pain crisis and pharyngitis with quick strep negative.  Id.  Plaintiff was also hospitalized on November 29, 2004 (Tr. 208),

and on November 30, 2004, she underwent surgery for her obstructive sleep apnea (Tr. 210).

On December 3, 2004, Plaintiff was admitted to Shands at the University of Florida. (Tr. 214). The Discharge Summary shows Plaintiff complained of dehydration, fever, difficulty swallowing, and pain in her throat and ear. Id. Her lab results showed seven categories were not within normal range. (Tr. 216). Plaintiff was placed on morphine for the pain. (Tr. 215). Her discharge report shows her pain was well-controlled and she was able to take oral medications. Id. It was also noted Plaintiff had regular heart rate and rhythm, and had no murmurs, gallops, or rubs. (Tr. 214).

On January 23, 2005, Plaintiff was admitted to Shands again. (Tr. 189). The admission report shows Plaintiff complained of pain all over her body. (Tr. 189, 198). Her exams showed she was not in acute distress (Tr. 187), had no signs of murmurs (Tr. 188, 190) or acute chest syndrome (Tr. 190), had no acute pulmonary infiltrates, had only slight cardiomegaly (Tr. 187, 197), and had normal EKG results (Tr. 187). The lab results showed thirteen categories were not within normal range. (Tr. 192-95). Plaintiff was discharged on January 30, 2005 with a resolved sickle cell pain crisis and "no restrictions on her activities." (Tr. 188).

Previously, on January 5, 2005, Amos Kedar, M.D., Plaintiff's treating physician at Shands, sent a letter to the Social Security Office about Plaintiff's condition. (Tr. 184). In the letter, Dr. Kedar mentioned Plaintiff had been diagnosed with sickle cell disease and had been hospitalized about five times for pain crises [in 2004]. Id. Dr. Kedar stated "[Plaintiff] has been to her physician at least twenty times since 2003." Id. Dr. Kedar asserted Plaintiff would continue to experience fatigue, pain, and other complications. Id. In conclusion, Dr.

Kedar added: "Sickle cell disease is a chronic **lifetime** disorder with an anticipated mortality early in the 40's due to complications. . . . Many of our patients cannot maintain employment due to the pain crises and having to miss many days from work." Id. (emphasis in original).

### 2. Plaintiff's Mental Impairments

Plaintiff does not raise any mental impairments on appeal, and therefore, none are discussed by the Court.

### 3. Summary of Plaintiff's Testimony

Plaintiff alleges her impairments affect her ability to stand (Tr. 108); walk; run; exercise; lift and carry items with her arms (Tr. 97); stay awake (Tr. 108, 112); shop for groceries (Tr. 108, 283); do chores (Tr. 109), such as doing the laundry (Tr. 279), cooking, washing the dishes, making the bed, mopping, taking out the trash, and working in the yard (Tr. 280); watch TV (Tr. 281); manage her finances (Tr. 109); bathe (Tr. 109, 285); socialize (Tr. 109); concentrate; finish simple jobs; deal with deadlines or schedules (Tr. 111); and attend school (Tr. 272).  Plaintiff asserts she has occasional chest discomfort lasting for three days caused by stress but relieved with medicine. (Tr. 97-98).  She characterizes the pain as a ten plus on a scale of one to ten (ten being the worst).  (Tr. 99).  Plaintiff claims her pain is overwhelming (Tr. 100), lasts for four days, occurs occasionally, is caused by temperature extremes, stress, and excessive body work (Tr. 99), but is relieved with medication (Tr. 100).  Plaintiff notes her pain medication causes sleepiness. Id.  Despite her alleged impairments, Plaintiff is able to dress and bathe (Tr. 285), sweep the floor (Tr. 280), drive on a daily basis, visit with friends and relatives (Tr. 284), attend church (Tr. 283),

dine outside her home (Tr. 282), listen to music, read books (Tr. 281), and stay on the computer for three or four hours a day (Tr. 282). Plaintiff admits no restrictions have been placed on her by any physician and she was only advised to work within her limits. (Tr. 102).

### C. <u>Summary of the ALJ's Decision</u>

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 416.920(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(a)(4)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in a

substantial gainful activity since her alleged onset date, May 1, 2003. (Tr. 15-16, 23). At steps two and three, the ALJ found Plaintiff had

> sickle cell disease, mild sleep apnea, and status post motor vehicle accident, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, of Regulations No. 4.

(Tr. 20, 23).

The ALJ found Plaintiff retained the RFC "to perform sedentary and light work." (Tr. 22, 23). The ALJ determined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday, but must alternate sitting and standing every thirty minutes, and occasionally bend, crouch, kneel, stoop, squat, or crawl. Id. At step four, based on the testimony of the vocational expert ("VE") and Plaintiff's RFC, the ALJ found Plaintiff "could return to her past relevant work as [a] fast food worker as previously performed and as generally performed in the national economy." (Tr. 22). Nevertheless, the ALJ proceeded to step five where, based on the testimony of the VE, the ALJ found Plaintiff had "the capacity to perform other jobs existing in significant numbers in the national economy," such as a laborer, a price marker, a counter clerk, a surveillance systems monitor, and a photographer mounter. (Tr. 23-24). Accordingly, the ALJ found Plaintiff "was not under a disability as defined in the Social Security Act, at any time through the date of this decision." Id.

### III.   ANALYSIS

####   A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and

whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining a court must scrutinize the entire record to determine the reasonableness of the factual findings).

### B. Issues on Appeal

#### 1. Whether the ALJ properly considered Plaintiff's pain testimony.

Plaintiff argues the ALJ improperly rejected her pain testimony. (Doc. 20, p.19). The Commissioner responds the ALJ considered Plaintiff's subjective complaints of pain, evaluated them under the appropriate standard, but showed Plaintiff's credibility was undermined due to her daily activities, work history, the objective medical evidence, and Plaintiff's appearance and demeanor during the hearing. (Doc. 21, p.7-11). Upon review of

10

the record, the briefs, and the applicable law, the Court finds the ALJ appropriately considered Plaintiff's pain testimony and his decision was supported by substantial evidence.

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.929(a). Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). A Plaintiff's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient for a finding of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability, 42 U.S.C. § 423(d)(5)(A). Plaintiff may establish her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. Foote, 67 F.3d at 1561.

Although the ALJ failed to refer to the pain standard, the Court finds the ALJ properly

11

applied the standard. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (stating that even if "the ALJ does not cite or refer to the language of the three-part test," the pain standard is properly addressed when the ALJ's "findings and discussions indicate that the standard was applied"). By referring to Plaintiff's sickle cell disease, mild sleep apnea, and status post motor vehicle accident (Tr. 20), the ALJ established prong one of the pain standard, namely, evidence of an underlying medical condition.

"Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain in deciding the issue of disability." French v. Massanari, 152 F. Supp. 2d 1329, 1336 (M.D. Fla. 2001) (citing Foote, 67 F.3d at 1561). See also SSR 96-7P (stating that after the ALJ finds a medically-determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

Here, by looking at Plaintiff's daily activities, work history, treatment records, and courtroom demeanor (Tr. 21-22), the ALJ addressed the intensity, persistence, and limiting effects of Plaintiff's symptoms. The ALJ stated the objective medical evidence shows Plaintiff has symptoms and limitations, but "they do not prevent her from working." (Tr. 21). The ALJ further noted Plaintiff's "daily activities . . . are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations." Id. Thus, the ALJ acknowledged Plaintiff's symptoms and limitations, but concluded the objective medical

12

evidence, Plaintiff's daily activities, work history, and courtroom demeanor do not confirm the severity of her alleged pain or the severity of her medical condition, thereby showing Plaintiff failed to meet prongs two and three of the pain standard.

When Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  SSR 96-7P.  See also Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988) (stating that in determining whether the pain standard is met, the credibility of the Plaintiff's testimony must be considered).  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (stating articulated reasons must be based on substantial evidence); see also Moore v. Barnhart, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (holding that precedent in the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony").  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

In the instant case, the ALJ found "[Plaintiff's] testimony not entirely credible and inconsistent with the evidence of record when considered in its entirety." (Tr. 22).  The ALJ articulated specific reasons for discrediting Plaintiff's testimony, namely, its inconsistency with the other evidence in the record (Id.), and specifically with Plaintiff's daily activities (including her work history), treatment records, appearance, and demeanor (Tr. 21-22).

13

The Court finds the ALJ's conclusion is supported by substantial evidence in the record.  First, the ALJ correctly pointed out that Plaintiff's daily activities are inconsistent with her claimed limitations.  The record shows Plaintiff is able to bathe and dress (Tr. 285), sweep the floor (Tr. 280), drive on a daily basis, socialize (Tr. 284), attend church (Tr. 283), dine outside her home (Tr. 282), read books (Tr. 281), and stay on her computer for hours at a time (Tr. 282).  Importantly, the record shows inconsistencies in Plaintiff's statements regarding her daily activities.  There are inconsistencies as to Plaintiff's ability to bathe (Tr. 104, 109, 285), cook (Tr. 108, 280), do chores (Tr. 109, 280), shop for groceries (Tr. 108, 283), socialize (Tr. 109, 110, 284), and attend church (Tr. 109, 283).  It was Plaintiff's burden to clarify these inconsistencies.  See Doughty v. Apfel, 245 F.3d 1274, 1276, 1278 (11th Cir. 2001) (holding the burden is on the claimant to show disability); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (explaining the claimant bears the burden of persuasion through step four).

Next, Plaintiff's complaints are also inconsistent with her treatment records.  The record shows that despite Plaintiff's diagnosis of sickle cell disease, her crises were infrequent (Tr. 160, 233, 235, 242, 260, 263-65) and resolved in a timely manner (Tr. 188, 200).  In addition, despite her history of a heart murmur, Plaintiff's heart rate and rhythm were normal (Tr. 159, 214) and there was no sign of murmurs (Tr. 188, 190, 214, 224).  Although Plaintiff was frequently hospitalized, the record shows she was not in acute distress (Tr. 187, 227), her condition was stable (Tr. 125) or improved (Tr. 120), and her pain ceased (Tr. 159, 266) or was controlled with medication (Tr. 215, 250-51).  Moreover, on discharge, Plaintiff had "no restrictions on her activities" by her physicians (Tr. 188) and on several occasions, she stated she was ready to go home (Tr. 159, 200).

14

In addition, Plaintiff's complaints are inconsistent with the two physical RFC assessments completed by the State Agency physician (Tr. 139) and by Dr. Steele (Tr. 176). Both RFC assessments showed Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours and sit for six hours in an eight-hour workday, and push and/or pull without limitation. (Tr. 140, 177). Both RFC assessments showed Plaintiff had no postural (Tr. 141, 178), manipulative, visual (Tr. 142, 179), or communicative limitations (Tr. 143, 180). Dr. Steele noted Plaintiff should avoid concentrated exposure to extreme cold and extreme heat. (Tr. 180). Importantly, Dr. Steele expressly stated Plaintiff's symptoms were "partially credible" due to her infrequent crises and benign exam. (Tr. 181). Thus, Plaintiff's complaints regarding her limitations are not supported by the physical RFC assessments on record.

Finally, the ALJ also gave "some slight weight" to Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing" in deciding Plaintiff's credibility. (Tr. 22). The ALJ emphasized that this was "only one among many [factors] being relied on in reaching a conclusion regarding the credibility of the claimant's allegations." Id. Although it is error for the ALJ to comment that a Plaintiff does not appear in pain at the hearing, McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988), the ALJ is not precluded from considering a Plaintiff's appearance and demeanor during a hearing where the ALJ considered all the evidence and did not discredit the Plaintiff's pain testimony based solely on his observations, Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987); Long v. Shalala, 902 F. Supp. 1544, 1547 (M.D. Fla. 1995). Here, the ALJ did not err when he considered Plaintiff's appearance and demeanor, because he did not exclusively rely on his observations.

15

In sum, the Court has reviewed the record and finds the ALJ's decision to discount Plaintiff's pain testimony is supported by substantial evidence considering the objective medical evidence, Plaintiff's daily activities, her work history, and her courtroom demeanor.

### 2. Whether the ALJ properly evaluated Dr. Kedar's opinion.

Plaintiff argues the ALJ failed to discuss or state the weight given to the opinion of Plaintiff's treating physician, Dr. Kedar, and particularly to Dr. Kedar's January 5, 2005 letter. (Doc. 20, p.19). The Commissioner responds the ALJ discussed Dr. Kedar's opinion, but the letter did not provide any concrete limitations which the ALJ could incorporate in his RFC determination. (Doc. 21, p.5). The Court has considered the record and finds the ALJ appropriately considered Dr. Kedar's opinion, including his January 5, 2005 letter.

As mentioned previously, in his January 5, 2005 letter to the Social Security Office, Dr. Kedar opined Plaintiff had been diagnosed with sickle cell disease, had been hospitalized about five times for pain crises [in 2004], had visited her physician at least twenty times since 2003, and would continue to experience fatigue, pain, and other complications. (Tr. 184). Dr. Kedar also noted sickle cell disease is a lifetime disorder and that many patients who have the disease cannot maintain employment because of pain crises and missed days from work. Id. Importantly, Dr. Kedar has never stated Plaintiff cannot work and has not imposed any restrictions on her activities. Id.

In the instant case, the ALJ properly discussed the evidence from Dr. Kedar's records. (Tr. 18-21). The ALJ stated "Dr. Kedar did not opine that the claimant could not work nor did he give her any work related limitations." (Tr. 21). The ALJ noted "[Dr. Kedar's] treatment records show that the [Plaintiff's] sickle cell disease is stable and that she only has mild sleep

16

apnea." Id.

Notably, the ALJ did not discredit Dr. Kedar's opinion, and in fact, the opinion was consistent with the other evidence in the record. The ALJ correctly stated that neither Dr. Kedar nor any of the physicians at North Florida Pediatrics expressed an opinion that Plaintiff cannot work. (Tr. 139-44,184-85, 230, 233, 235, 242, 260, 263-66). Moreover, the records from Shands show Plaintiff had "no restrictions on her activities." (Tr. 188). Further, Plaintiff's own statements confirm that no restrictions have been placed on her by any physician and that she was only advised to work within her limits. (Tr. 102). Therefore, Plaintiff's argument that the ALJ should have given more weight to the opinion of Plaintiff's treating physician, Dr. Kedar, is misplaced. The Court finds the ALJ gave full consideration to Dr. Kedar's opinion in deciding Plaintiff is not disabled.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  3rd  day of August, 2007.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record